UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 2:22-CR-47-cr |
| | ) | |
| WILLIAM HILLARD, | ) | |
| Defendant | ) | |

**OPPOSITION TO MOTION TO RECONSIDER ORDER OF DETENTION**

The United States of America, by and through its attorney, Nikolas P. Kerest, United

States Attorney for the District of Vermont, hereby files its Opposition to defendant William

Hillard's Motion to Reconsider Order of Detention and Request for Release on Conditions (the

Motion). There is no condition or combination of conditions that can be set to reasonably assure

the safety of the community. Accordingly, Hillard should remain detained pending trial in this

matter.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In April 2022, a Source of Information (SOI) told law enforcement that Hillard was in

possession of explosive devices. The SOI provided a device it said it received from Hillard.

(Doc. 1-1 at ¶ 4, 5b). Among other things, the SOI disclosed that Hillard had lost fingers on one

hand when a device exploded, he would use ball bearings and "ice cream shaped screws" in his

devices to cause more damage, he mixed oxidizer and fuel powders to create explosives, and

Hillard experimented with blast patterns and estimated "how many people he could 'kill' based

upon the blast pattern." (Doc. 1-1 at ¶¶ 5c-5e). Law enforcement examined the device provided

to it by the SOI, and determined that it was, in fact, an explosive device. (Doc. 1-1, ¶ 7).

On April 13, 2022, law enforcement executed a state-issued warrant to search Hillard's

residence. During that search, law enforcement discovered an AR-15 type rifle in a case on the

floor of the bedroom across from Hillard's bedroom.  In Hillard's bedroom, law enforcement found multiple large capacity rifle ammunition magazines filled with ammunition and hundreds of rounds of ammunition in various calibers.  (Doc. 1-1 at ¶ 12).  Law enforcement also found eight (8) destructive devices in the residence.  (Doc. 1-1 at ¶¶ 13-16).  During a *Mirandized* interview, Hillard admitted that he had an AR-15 type rifle, he had prior felony convictions and could not lawfully possess firearms, he made explosive devices, and he had detonated approximately 50 explosive devices in recent years, some of which had ball bearings, BBs, or screws inserted into the devices.  (Doc. 1-1 at ¶ 11).

On April 14, 2022, a criminal complaint was filed against Hillard.  (Doc. 1).  On April 15, 2022, the Court granted the government's motion and ordered Hillard detained pending trial.  (Doc. 9, 11).  The Court specifically found that the government had established by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any person and the community.  (Doc. 11).

The grand jury returned an indictment against Hillard on April 28, 2022.  The indictment charges him with one count of being a previously convicted felon in possession of a firearm, and one count of possession of a destructive device not registered to him in the National Firearms Registration and Transfer Record.  (Doc. 12).

## BAIL REFORM ACT

The Bail Reform Act, codified at 18 U.S.C. § 3141, *et seq.*, requires a judicial officer to determine whether a criminal defendant can be released on conditions that will reasonably assure the individual's appearance as required and the safety of the community.  18 U.S.C. §§ 3141, 3142(f).  At this hearing, the government bears a dual burden to demonstrate the need for pretrial detention.  *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007).  First, the government has

the burden of demonstrating by a preponderance of the evidence that the defendant poses a risk of flight, or proving by clear and convincing evidence that the defendant is a danger to the community. *Id.*; 18 U.S.C. § 3142(f)(2) (establishing clear and convincing evidence standard concerning safety to the community).

Although detention hearings are adversarial hearings, both the defendant and the government may proceed by proffer. *United States v. Ferranti*, 66 F.3d 540, 541 (2d Cir. 1995). *See also United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986) ("Congress did not want detention hearings to resemble mini-trials."). Although proffers are allowed, the parties are also afforded the opportunity to present evidence for the judicial officer to consider. 18 U.S.C. § 3142(f) (outlining procedural rights at detention hearing, including right to present witnesses and testify).

"[W]here there is a strong probability that a person will commit additional crimes if released, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate." *United States v. Colombo*, 777 F.2d 96, 98-99 (2d Cir. 1985) (quotation omitted). Danger to the community in the context of the Bail Reform Act includes "the harm to society caused by [the likelihood of continued] narcotics trafficking." *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985). Further, criminal conduct by a defendant need not "be connected to the activity charged in the indictment" to be relevant. *See United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991).

After meeting its first burden, the government must then show that no condition or combination of conditions exist to remedy either risk. *Sabhnani*, 493 F.3d at 75. In making its determination, the court may consider: (1) the nature and circumstances of the offense charged, including whether the offense "involves a controlled substance [or] firearm"; (2) the weight of

the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  18 U.S.C. § 3142(g).

## APPLICATION TO DEFENDANT

As recounted above, 18 U.S.C. § 3142(g) outlines four factors to be considered.  The first factor is the nature and circumstances of the charged offense, including whether it involves controlled substances and firearms.  Hillard is charged with possession of an AR-15 type rifle while fully aware that his prior convictions prohibited him from possessing this weapon.  As demonstrated in recent mass-shooting events, weapons like the AR-15 Hillard possessed are capable of being used in ways meant to harm many victims in a short period, particularly when coupled with high-capacity magazines such as those in Hillard's home.  Hillard possessed hundreds of rounds of ammunition in different calibers.  Hillard also possessed destructive devices that he had not registered.  He specifically designed these destructive devices to inflict the maximum amount of damage to human victims by inserted ball bearings, BBs, and screws into them.  According to the SOI, Hillard specifically researched blast patterns so he could inflict the most damage.  It is obvious that the defendant's conduct implicates significant concerns for the safety of the community.  This factor weighs heavily in favor of his continued detention.

The second factor is the weight of the evidence.  The evidence concerning the pending charges against Hillard is overwhelming.  Law enforcement found the AR-15 type rifle and destructive devices during execution of a state search warrant, and Hillard admitted to his knowing possession of those items.  This factor also weighs heavily in favor of detention.

As for Hillard's history and characteristics, his criminal record consists of two felony convictions, including one conviction for possession of a bomb or explosive.  During the

commission of that prior offense, an explosive device went off in his hand, and the defendant lost fingers.  Hillard's continued involvement in bomb-making, even after suffering such a grave injury, should lead the Court to conclude Hillard would not abide conditions of release.

The fourth factor is the nature and seriousness of the danger posed to any person and the community by Hillard's release.  Given the nature of the charges and the alleged offense conduct — to which the defendant admitted -- Hillard's release would pose a self-evident danger to the community.

In the Motion, Hillard seeks release to return to live with his mother and to attend counseling to help process grief over his father's death three years ago and to address general anxiety.  The government believes that the proposed release conditions are inadequate to address the risk of harm he poses to the community.  First, his interest in making and detonating bombs long pre-dates his father's death, so counseling to address his grief would not address whatever foundational problem informs his life-long interest in bombs and bomb-making.  Second, while it is correct that law enforcement seized the AR-15 type rifle and the bombs he had assembled, Hillard appears to be a competent bomb-maker and can lawfully gather the materials needed to make new bombs if he so desires.  Hillard's suggestion that he would "follow a condition to not possess or acquire any of these items" (Motion at 5) rings hollow in light of his admitted and knowing illegal possession of an AR-15 type rifle and the destructive devices.  Therefore, the government believes that there is no condition or combination of conditions that could be set to address the danger to the community posed by his release.

## **CONCLUSION**

For the reasons outlined above, the Court should deny Hillard's Motion to Reconsider

Order of Detention and Request for Release on Conditions.

Dated at Burlington, in the District of Vermont, June 9, 2022.

Respectfully submitted,

UNITED STATES OF AMERICA

NIKOLAS P. KEREST
United States Attorney

By:     */s/ Barbara A. Masterson*
BARBARA A. MASTERSON
Counselor to the U.S. Attorney
P.O. Box 570
Burlington, VT 05402-0570
(802) 951-6725